# In the United States District Court
# for the
# Western District of Texas

| | |
|---|---|
| Official Committee of Equity Security Holders, et. al. | §§§ |
| | § SA-09-mc-576 |
| Appellants | §§§§§ |
| v. | §§ |
| Spectrum Jungle Labs Corp., et. al. | §§§ |
| | §§ |
| Appellees | § |

## Order

On this day came on to be considered Appellant Official Committee of Equity Security Holders' Emergency Motion for Stay Pending Appeal.

## Background

On July 15, 2009, the Western District of Texas Bankruptcy Court entered an Order confirming the Proposed Joint Plan of Reorganization of Spectrum Jungle Labs Corporation. On July 15, the Appellant (hereinafter "Equity Committee") filed a notice of appeal of the Confirmation Order.

Pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, the Equity Committee filed an Emergency Motion for a Stay Pending Appeal. A motion for stay was initially presented to the Bankruptcy Court for its

consideration, but the motion was denied on July 16. The Equity Committee now seeks a stay of the Confirmation Order from this Court.

The major issue presented in this matter is whether the Bankruptcy Judge erred in valuing Spectrum. Relying upon the expert opinion of Barry Riding, the Bankruptcy Judge found that Spectrum's value was between $2.3 billion and $2.5 billion and that Spectrum had debt of $2.6 to $2.7 billion. The Equity Committee argues that the correct value was between $3.1 billion and $3.3 billion as opined by their expert Enrique Senior. As a result of the Bankruptcy Court's verbal findings and entry of the Confirmation Order the Noteholders will receive new subordinated debt in the amount of $218 million and 100% of the New Equity. Spectrum's existing equity holders will receive nothing and the existing equity is cancelled.

The Equity Committee argues that (1) the Plan's treatment of the existing equity holders is not fair and equitable as required by section 1129(b)(1) of the Bankruptcy Code; (2) the Plan was not proposed in good faith as required by section 1129(a)(3); (3) the Plan includes a post-confirmation injunction that effectively discharges and releases nondebtor third parties in violation of *Feld v. Zale*, 62 F.3d 746 (5th Cir. 1995); (4) the Plan impermissibly provides for the payment of fees and expenses of the negotiating noteholders in violation of 11 U.S.C. § 503(b); and (5) the Confirmation Order impermissibly contains a provision that purports to make actions taken under it immune to reversal in violation of the Bankruptcy Code.

## Standard of Review

In the bankruptcy appellate process, the district court reviews fact findings of the Bankruptcy Court under a clearly erroneous standard and issues of law are reviewed de novo. *Matter of Berryman Products, Inc.*, 159 F.3d 941, 943 (5th Cir. 1998).

The party who seeks a stay must show: (1) a likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to the other parties from granting the stay, and (4) service to the public interest from granting the stay. *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1067 (5th Cir. 1986).

The party seeking the stay must satisfy all four of these criteria in order to prevail. *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

## Analysis

### A. Likelihood of Success on the Merits

As stated above, the major issue in this case is the Bankruptcy Court found that Spectrum had a value of $2.4 billion and the Equity Committee believes the correct value was $3.2 billion.[1] All parties agree the $.8 billion difference is due primarily to the control premium evaluated by Mr. Senior.[2]

---

[1] The question of whether Spectrum was properly valued encompasses the Equity Committee's argument that the Plan was not "fair and equitable" and the argument that the Plan was not proposed in good faith. The remaining points of error are all secondary issues.

[2] About $350 million of the $.8 billion difference is attributable to the peer selections or comparables that were picked.

The Bankruptcy Court heard from three different experts (Mr. Senior, Mr. Ridings and Joshua Scherer). The Debtors argue that all three experts applied the exact same methodologies (comparable company, precedent transaction and discounted cash flow). The transcript from the Bankruptcy Court's lengthy hearing indicates the Bankruptcy Court considered all three opinions, but found Mr. Ridings' opinion most persuasive. In his testimony Mr. Ridings considered the issue of whether there would be a controlling bondholder or group of bondholders post-confirmation and whether that would enhance the value of Spectrum. Mr. Ridings testified and the Bankruptcy Court heard that Harbinger would have the biggest piece, but not a majority interest (approximately 35 percent). He also testified that it was uncertain whether the bondholders would act together considering that they "haven't acted together very well so far." He further opined that these various hedge funds have their own unique set of problems and their own individual performance objectives that they have to meet. Mr. Scherer also testified that in his opinion a control premium was not appropriate. The three major bondholders (Harbinger, D.E. Shaw and Avenue Capital) do not have any agreements among themselves regarding control. These are independent hedge funds that have different limited partners, different investment horizons and different investment criteria. There is nothing that prohibits any one of the noteholders from selling at any point in time. Indeed, the Debtors suggest that by virtue of Harbinger having a 35 percent ownership interest there may actually be "negative control," i.e., a blocking position which would warrant a discounting on value. The

4

Bankruptcy Judge considered all of the above evidence and apparently agreed with Mr. Ridings' conclusion that given these facts the application of a control factor enhancement was not proper. In the same vein, it is apparent that the Bankruptcy Judge rejected Mr. Senior's opinion that because the three noteholders jointly own 71 percent, a control factor enhancement must be applied. The Equity Committee argues in its motion for an emergency stay that the Bankruptcy Court erred in applying the law. Based on the limited record before this Court at this time, it appears that the Equity Committee is attacking the Bankruptcy Court's findings of fact. The Equity Committee has not established that the fact findings of the Bankruptcy Court were clearly erroneous.

Given the Bankruptcy Court did not issue any written order and issued only a verbal ruling, and given that the Bankruptcy Judge did not cite any case law, it is difficult at this juncture to determine whether the Bankruptcy Court applied the wrong law. Citing to *Matter of Clark Pipe and Supply Co., Inc.*, 893 F.2d 693 (5th Cir. 1990) and other cases, the Equity Committee argues that the Bankruptcy Court failed to adopt the appropriate method of valuation and that error is an error of law. Based on the limited record before this Court at this time, it is not apparent that the Bankruptcy Court failed to adopt the appropriate method of valuation. To the contrary it appears that all of the experts whose opinions the Bankruptcy Judge considered engaged in similar methods of valuation. Mr. Senior, however, opined that an enhancement should be also applied for control. Based upon the facts in this situation, Mr. Ridings

5

opined that this control enhancement should not apply and the Bankruptcy Court agreed. It is not apparent that the Bankruptcy Court's ruling violated *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997). The Equity Committee has not satisfied this prong.

### B. Irreparable Harm

At the hearing held on July 22, the Debtors concede that irreparable injury will occur to the Equity Committee if the stay is not granted. The Equity Committee has satisfied this prong.

### C. Absence of Substantial Harm to Other Parties from Granting the Stay

The Debtors argue that Spectrum's viability as an ongoing concern in an already fragile economy would be seriously threatened by a delay. Spectrum argues that its customers require immediate delivery of goods, commitment letters from existing creditors could be jeopardized by a delay, and other creditors payments need to be considered. The Equity Committee has not established the absence of substantial harm to the other parties from granting the stay.

### D. Failure to Satisfy Criteria for Relief

The party seeking the stay must satisfy all four stay criteria in order to prevail. *See Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). Inasmuch as the Equity Committee has failed to establish all four criteria, the Equity Committee fails to establish its

entitlement to an emergency stay.

## Conclusion

After consideration of the emergency motion, the briefs filed by all parties and the oral argument of counsel held on July 22, 2009, Appellants' Emergency Motion for Stay Pending Appeal (docket 1) is DENIED.

It is so ORDERED.

SIGNED this 23 day of July, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE