# In the United States District Court for the Western District of Texas

| | | |
|---|---|---|
| Official Committee of Equity Security Holders of Spectrum Jungle Labs Corp. <br>     Appellant <br><br> v. <br><br> Spectrum Jungle Labs Corp. <br>     Appellee | § § § § § § § § § § § | Civ. No. SA:09-CV-576-XR |

**Order**

On this date, the Court considered the "Emergency Motion of the Official Committee of Equity Security Holders of Spectrum Jungle Labs Corp., et al., pursuant to 28 U.S.C. § 1292(b) for Certification of Interlocutory Appeal of Order Denying Stay Pending Appeal" (docket no. 17), and the Response and Reply thereto. Pursuant to an Order from the Fifth Circuit, this Court ordered expedited briefing and has given the motion expedited consideration. After such consideration, the Court will deny the motion to certify an interlocutory appeal.

I.

Debtor Spectrum Jungle Labs filed for Chapter 11 bankruptcy in the Western District of Texas on February 3, 2009, and simultaneously filed a pre-negotiated proposed plan of reorganization. The proposed plan essentially canceled all existing or "old" equity and gave new equity to Spectrum's existing

bondholders. The United States Trustee appointed the Equity Committee, Appellant here, to represent the interests of the existing equity holders. The Equity Committee asserted that the plan was not proposed in good faith and was not fair and equitable with regard to existing equity's interests.

On April 28, 2009, after making some modifications to the original plan, the Debtors filed their Joint Plan of Reorganization of Spectrum Jungle Labs Corporation, et al. The Bankruptcy Judge conducted a lengthy hearing on the merits of the proposed plan in June. Because existing equity holders' interests were impaired and the plan gave over 70% of the new equity to the existing three note/bondholders, Harbinger, D.E. Shaw, and Avenue Capital, a main contested issue was Spectrum's value. Three different experts testified regarding valuation: Joshua Scherer, retained by the Debtors; Barry Ridings, retained by Harbinger; and Enrique Senior, retained by the Equity Committee.

On July 15, 2009, over the Equity Committee's objection, Bankruptcy Judge King entered an Order confirming the Proposed Joint Plan of Reorganization of Spectrum Jungle Labs Corporation. On July 15, the Equity Committee filed a notice of appeal of the Confirmation Order. The Equity Committee summarizes its issues on appeal as follows: (1) the Plan's treatment of the Existing Equity Holders is not "fair and equitable" (as required by section 1129(b)(1) of the Bankruptcy Code) because the Noteholders will receive consideration worth more than the amount of their claims; (2) the Plan was not proposed in good faith (as required by section 1129(a)(3) of the Bankruptcy Code) because Spectrum's board proposed the Plan to satisfy its creditors but took no

2

action to protect existing equity holders, and Spectrum and the negotiating noteholders took affirmative actions during the bankruptcy to artificially depress Spectrum's value; (3) the Plan includes a post-confirmation injunction that effectively discharges and releases nondebtor third parties, which is not permitted under binding Fifth Circuit precedent; (4) the Plan provides for the payment of the fees and expenses of the negotiating noteholders, including attorneys' fees and financial advisor fees without the need for application in violation of 11 U.S.C. § 503(b); and (5) the Confirmation Order contains an improper provision that purports to make actions taken under it immune to reversal.

On July 16, the Equity Committee filed an Emergency Motion for a Stay[1] Pending Appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure, requesting expedited consideration and oral argument.

This Court granted the requests for expedited consideration and oral argument and held a hearing on the motion to stay on July 22. This Court issued an Order denying the stay on July 24. In that Order, the Court noted that a party seeking a stay must show: (1) a likelihood of success on the merits, (2) irreparable injury if the stay is not granted, (3) absence of substantial harm to the other parties from granting the stay, and (4) service to the public interest from granting the stay. *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1067 (5th Cir. 1986). This Court concluded that the Equity Committee had failed to

---

[1] A motion for stay was initially presented to the Bankruptcy Judge for his consideration, but the motion was denied on July 16.

demonstrate a likelihood of success on the merits and the absence of substantial harm to the debtor from granting the stay, and thus denied the motion.

On July 27, the Equity Committee filed a notice of appeal and an emergency motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On July 30, the Fifth Circuit first issued an order suspending this Court's order denying the stay, as well as staying all proceedings in this Court and in the bankruptcy court pending further order. Shortly after, the Fifth Circuit modified the stay to permit this Court, on an expedited basis, to consider and rule on the Equity Committee's motion for certification of interlocutory appeal. This Court ordered a response on an expedited schedule, which the Debtors filed on August 3. The Agent for the Senior Secured Lenders and Harbinger Capital joined in the Response. The Equity Committee also filed an expedited Reply on August 3.

**II.**

The Equity Committee moves this Court to issue a certification pursuant to 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).[2] Thus, leave to hear the appeal of an interlocutory order is

---

[2] It is undisputed that the order denying the stay is an interlocutory order. The Fifth Circuit had once held that it could not hear appeals of interlocutory orders of a district court

4

generally granted only if the order being appealed meets the three criteria set forth in 28 U.S.C. § 1292(b). *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). These criteria include: (1) whether the order deals with a controlling question of law; (2) whether a ground for substantial disagreement regarding the question exists; and (3) whether an immediate appeal would materially advance the ultimate termination of the litigation. *Id.*

The Equity Committee asks this Court to certify a number of questions for interlocutory appeal, all of which form the basis for the underlying appeal from the confirmation order, as the Equity Committee acknowledges. *See* Motion at 6 (noting that consideration of the interlocutory appeal on the questions requested by the Equity Committee would "allow the Court of Appeals to review the essential questions of law raised by the Appeal"). The Equity Committee argues that a ground for substantial disagreement on these issues exists because the requested certified questions "present issues which the Court of Appeals has not yet had the opportunity to consider." The Equity Committee further argues that an interlocutory appeal would materially advance the litigation because "many of the key legal questions which are determinative of the Appeal would

---

sitting as an appellate court in a bankruptcy case under § 1292(b) because § 1292(b) was superseded by 28 U.S.C. § 158(d), which provided for court of appeals jurisdiction over appeals only from final decisions of a district court sitting in an appellate capacity. *See, e.g.*, *Matter of Topco, Inc.*, 894 F.2d 727, 735 n.12 (5th Cir. 1990). Thus the only means of appellate review when a district court denied a stay pending appeal of a bankruptcy court's order was a writ of mandamus. *Id.* However, the Supreme Court has since made clear that § 158(d) does not exclude application of § 1292(b), and thus interlocutory orders of a district court, sitting as either a bankruptcy trial or bankruptcy appellate court, are reviewable by the court of appeals under § 1292(b). *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249 (1992); *see Matter of Nichols*, 21 F.3d 690, 693 & n.9 (5th Cir. 1994) (recognizing abrogation of Fifth Circuit's approach).

5

be analyzed by the Court of Appeals" or at the very least would provide valuable guidance to this Court with respect to the "novel and difficult issues of law raised by the Appeal."

## III.

As previously noted in the Order denying the motion to stay, the main issue is whether Spectrum was properly valued, which depends in large part on the testimony of the three expert witnesses. The difference among the experts' valuations arises primarily from the inclusion of a control premium in the valuation methods.

Judge King, in his oral pronouncement of fact findings and conclusions of law, noted that he believed each of the experts to be well-qualified, that they "disagreed in a number of key areas," and that he had to "weigh the evidence." June 25, 2009 Tr. at 95. He stated that he had to evaluate the witnesses and make choices, and that he found "Mr. Ridings' opinion most persuasive" and agreed "with Mr. Ridings' analysis." *Id.* at 96. King thought Senior was "a very qualified individual," but found that "his reliance on the control factor differentiates his opinion from that of the report of Mr. Ridings." *Id.* at 97. Further, Judge King concluded, "a bankruptcy plan is different from a hostile takeover outside of bankruptcy" and "different from a tender offer outside of bankruptcy" and the debtor has the exclusive right to file a plan of reorganization and seek acceptance in a limited amount of time, which they did, and they could do so with the bondholders' prepetition agreement. *Id.* at 97-98.

6

Judge King then stated, "The issue comes down to value. And I think that the market is one reflection of the value, and so the market prices of the bonds and the shares of stock are certainly relevant, but they're not determinative. Even if the market is wrong, I would find Mr. Ridings' analysis to show that there's no value above the amount of debt that this company holds." *Id.* at 98. Thus, Judge King orally found that the value range was 2.3 to 2.5 billion, while the debt is 2.6 to 2.7 billion, and therefore there was no value left over for the equity holders. *Id.*

Judge King continued, "As far as value, I've listened to all the testimony of all experts and their various approaches, and they have basically three approaches, and it's something like the approach to real estate properties, where you have market costs and direct sales approach. They use different approaches for valuing enterprise value. But, in my opinion, the correct value is the value now, the value at the time of confirmation, not at some date in the future." *Id.* at 98-99. He stated, "I think control is a subjective factor. Certainly the experts can take whatever subjective factors they think in – take into account any subjective factors that they think need to be taken into account, and certainly Mr. Senior did. But I would point out that Spectrum got control of Remington and Rayovac when it bought them, and that hasn't worked out so great so far; it may in the future. They may increase their sales, they may increase their market share, they may be able to sell those divisions to other investors. So, at this point, I think it's a matter of opinion whether there was a valuable control

7

premium on those companies. That's just by way of example." *Id.* at 99-100. Judge King then concluded that Spectrum has "tremendous upside potential in the future. But the value is what a buyer would pay today without duress or undue influence, and, in my opinion, that's between 2.3 and 2.5 billion." *Id.* at 101.

The Agent for the Senior Secured Lenders also notes that the Bankruptcy Judge made written findings of fact and conclusions of law in the Confirmation Order. Of relevance here, the Confirmation Order states:

> The Court has heard the expert testimony offered by Perella Weinberg Partners LP on behalf of the Debtors, Lazard Freres & Co. LLC on behalf of Harbinger, and Allen & Company LLC on behalf of the Equity Committee. The Court finds the expert testimony offered by [Ridings of] Lazard Freres & Co. LLC to be the most credible as to the valuation of the Debtors. Based upon such expert testimony, together with the expert testimony provided by [Scherer of] Perella Weinberg Partners LP and other testimony received, the Court finds that total claims against the Debtors are approximately $2.7 billion, including postpetition interest on the Noteholder Claims, which would be payable before any distribution could be made to junior Classes. The enterprise value of the Debtors is approximately $2.3 billion to $2.5 billion. Class 7 Noteholders, with Claims, including postpetition interest, estimated to be in the amount of $1,133,507,174 as of July 15, 2009, will receive New Notes in the aggregate face amount of $218,076,405 and New Common Stock for the balance of their Claims. The New Common Stock attributable to the Noteholder Claims is estimated to have an aggregate value in the range of approximately $453 million to $615 million, against the remaining balance of $915,430,769. Based on these numbers, the aggregate percentage recovery for the Noteholder Claims, considering both the New Notes and the New Common Stock, is estimated to be in the range of approximately 60% to 75%. Because the Noteholder Claims will not be paid in full under the Plan, no distribution of property of the Debtors can be made to any junior Class of Claims or Interests. Classes 8 and 9 are junior impaired classes of Claims and Interests that are receiving no distribution under the Plan and are deemed to have rejected the

8

> Plan pursuant to 11 U.S.C. § 1126(g). The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 8 and 9 as required by 11 U.S.C. § 1129(b)(1). Because there is insufficient value in the Debtors' assets to produce payment in full to Class 7, which has prior rights to Classes 8 and 9, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy 11 U.S.C. § 1129(a)(8) as to such Classes. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all classes of Claims and Interests, including, but not limited to, Classes 8 and 9.

Confirmation Order ¶ AA, at 13-14.

The Bankruptcy Court did not issue specific findings regarding how it arrived at its valuation. The Court notes that in *Clark Pipe & Supply v. Smith*, 893 F.2d 693, 697 (5th Cir. 1990), the Court held that it could review a valuation determination even in the absence of precisely articulated reasons for the actions of the bankruptcy court based on the fact that the bankruptcy court expressly accepted the expert testimony offered by the trustee that liquidation value should be used, and that expert testimony contained reasons in support of its conclusion. Similarly, because Judge King expressly agreed with Ridings' analysis, this Court may review the valuation determination by referring to Ridings' analysis.[3] However, though it appears clear that Judge King relied primarily on Ridings' analysis, because Judge King did not determine value exactly in accord with Ridings' valuation, it may be necessary to remand for supplemental findings of fact regarding the precise method Judge King used to

---

[3] The Equity Committee asserts that Judge King relied on Scherer's analysis regarding valuation as well, based on the language in the Confirmation Order. However, both his oral and written findings indicate that he relied on Ridings to determine valuation. The Confirmation Order references Scherer only in regard to the amount of claims against the Debtors.

9

reach his results when considering the merits of the appeal. However, the Court finds that the current record is sufficient to resolve the issues presented by the motion to stay and the motion to certify an interlocutory appeal.

## IV.

The Equity Committee asks the Court to certify the following "main" issues for appeal:[4]

(1) Whether the Bankruptcy Court erred as a matter of law in concluding that the Debtors' enterprise value can be determined by taking into account the current market prices of the Debtors' securities;

(2) Whether the Bankruptcy Court erred as a matter of law by excluding the Debtors' future earning potential in determining the Debtors' value;

(3) Whether the Bankruptcy Court erred as a matter of law in concluding that there is a "reorganization value" standard unique to bankruptcy that ignores the recognized value of control;

(4) Whether the Bankruptcy Court erred as a matter of law when it failed to consider the value of control being given to the holders of the Debtors subordinated notes (the "Noteholders") in the Debtors' plan of reorganization;

(5) Whether the Bankruptcy Court erred as a matter of law by relying upon the Debtors' expert's (Scherer's) valuation and its valuation of a "minority tradable" interest in stock, without making any findings of fact that the Noteholders are

---

[4] The Equity Committee also asks the Court to certify three additional issues that do not relate to the good faith/fair and equitable question; these issues, which do not warrant a stay even if meritorious, will be summarily addressed later in this Order.

receiving only minority, tradable interests in reorganized Spectrum;

(6) Whether the Bankruptcy Court's implicit finding that the Noteholders will receive only a minority, tradable interest under the Plan is clearly erroneous;

(7) Whether the Bankruptcy Court erred as a matter of law in adopting unreliable valuation methods and improperly applied valuation methodologies; and

(8) Whether the Bankruptcy Court erred as a matter of law in concluding that the Plan was proposed in good faith and did not violate otherwise applicable non-bankruptcy law despite the Debtors' admission that they failed to fulfill the fiduciary duties owed to their shareholders under Wisconsin law (Spectrum's state of incorporation).

Section 1292(b) permits a district court to certify that its "order involves a controlling question of law as to which there is substantial ground for difference of opinion." On its face, this Court's Order denying the stay involves no controlling question of law as to which there is substantial ground for difference of opinion and certainly decides none of the issues that the Equity Committee seeks to have certified. All that was decided by this Court was whether the Equity Committee had demonstrated a likelihood of success on the merits of the issues presented in the appeal. The Court stands by its prior conclusion that the Equity Committee has failed to demonstrate a likelihood of success on the merits, and a stay would be inappropriate absent a showing that, without the alleged error by the Bankruptcy Court, Spectrum's enterprise value would exceed its debt. To the extent that the Equity Committee seeks to have

11

this Court certify issues on which this Court itself has not made any definitive rulings based on full briefing and a full record, the Court finds it inappropriate to certify those issues for appeal.[5] This alone supports denying the motion for certification.

However, the Court recognizes that the decision of whether the Equity Committee demonstrated a substantial likelihood of success of the merits involves an examination of the underlying issues on appeal, including issues of law, even though the Court issued no rulings on the underlying issues. The Court thus turns to whether those issues should be certified as requested.

With regard to the value of Spectrum, two main issues control this appeal: first, whether the Noteholders would have control of the reorganized Spectrum and second, if they would, how a control premium should be factored into the valuation analysis. The first issue, as apparently recognized by the Equity Committee, is a question of fact. The second issue, whether the valuation method must include a control premium if warranted by the facts, may be properly characterized as a legal question. *See ClarkPipe & Supply Co. v. Smith*, 893 F.2d 693, 697-98 (5th Cir. 1990) ("Valuation is a mixed question of law and

---

[5] If such a direct appeal were desired, 28 U.S.C. § 158(d)(2) provides the appropriate standard, not § 1292(b); however, this Court would not certify a direct appeal under the § 158(d)(2) standards either. The Court further notes that the parties have submitted new arguments and materials, such as the full transcript from the bankruptcy court, in conjunction with the motion to certify that were not available to this Court when ruling on the motion to stay. Further, to consider the underlying merits, the Court will need additional materials, such as Ridings' report, that have not yet been submitted. This is yet another reason why it would be premature to certify the underlying issues on appeal for an interlocutory appeal at this time, when the only issue actually pending and decided by this Court is whether a stay is justified.

fact, the factual premises being subject to review on a 'clearly erroneous' standard, and the legal conclusions being subject to *de novo* review.").

The fact issue underlying the Equity Committee's arguments is thus whether the Noteholders would have control of the reorganized Spectrum. Control has been defined as an interest that allows the shareholder to "unilaterally direct corporate action, select management, decide the amount of distribution, rearrange the corporation's capital structure, and decide whether to liquidate, merge, or sell assets." *Estate of Godvey v. C.I.R.*, 286 F.3d 210 (4th Cir. 2002) (citing *Estate of Newhouse*, 94 T.C. at 251-52).

It is undisputed that the Negotiating Noteholders together will hold between 70 and 80% of the stock in the reorganized Spectrum. The Equity Committee argues that this mandates inclusion of a control premium, for even if the noteholders do not act in concert, they have the ability to do so and thus the ability to control. In the Bankruptcy Court, the Equity Committee asserted that Scherer admitted that the noteholders would have the ability to control reorganized Spectrum. June 25, 2009 Tr. at 79-80. The Equity Committee also pointed out that "the actions in this case alone" show that "they have the ability and have exercised control; the noteholders' agreement, their agreement was required for the plan, the restructuring supports agreement, the plan supplement and all of its contents, including the new charter and the registration rights agreement." *Id.* at 80. The Equity Committee further pointed to the fact that "the noteholders blocked the company from seeking a

13

valuable benefit of its NOLs that would raise the value, because they are in control." *Id.* In addition, the Equity Committee noted that protections originally contemplated by a proposed shareholders' agreement were instead placed into the charter. *Id.* at 80-81. The Committee thus argues that "every significant step in this case has been accomplished through the agreement of each of those parties" and essentially argues that the ability to control has value, even if the noteholders do not utilize it.

However, there was also evidence that the noteholders are independent and have no agreement in place to act jointly, which this Court noted in its Order denying the stay. Further, it is undisputed that each noteholder individually is not receiving enough shares to give it control. Possibility of control is not actual control. Having the power to do an act unilaterally and having the power to do an act only with the participation of others are not the same thing. Thus, the Court disagrees with the Equity Committee's fundamental assumption that the *possibility* of joint action is sufficient to mandate a finding of control and inclusion of a control premium. As a result, the Equity Committee has failed to demonstrate that Judge King's implied finding[6]

---

[6] Debtors argue that Judge King did make an express finding of lack of control, citing to his statement that "it's a matter of opinion whether there was a valuable control premium on those companies." June 25, 2009 Tr. at 100. However, taken in context, it is clear that this statement is not referring to whether there was a valuable control premium on Spectrum, but on Remington and Rayovac ("those companies"). Judge King was simply making the point that control does not necessarily mandate a control premium. Thus, the Court agrees with the Equity Committee that Judge King did not make an express finding regarding the existence of control. However, such a finding can be implied, and this Court may review the Bankruptcy Court's implied fact findings for clear error. *See, e.g., Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) ("We review for clear error all facts expressly or impliedly found by the district court.").

Moreover, Judge King expressly adopted Ridings' analysis, and Ridings stated that he

regarding control is likely to be found clearly erroneous, and failed to demonstrate a likelihood of success on the merits of its sixth issue. This implicit fact finding does not present a controlling issue *of law* suitable for certification.

Further, based on Judge King's implied finding of no control, it cannot be said that Judge King erred in his valuation by declining to include a control premium.[7] It therefore follows that the Equity Committee has not demonstrated a likelihood of success on the merits of its requested issues related to the impact of control on the valuation (requested issues 3, 4, 5, and 7), nor does the Court find that there is substantial room for disagreement on this issue based on the current record. Further, these issues are not controlling issues of law suitable for certification because they are irrelevant without a finding of control.

Nor has the Committee demonstrated a likelihood of success on the merits of its other valuation arguments that would justify a stay. In the first and second proposed certified issues, Debtors challenge the Bankruptcy Court's

---

would not find control. Ridings testified that, though the three bondholders will own more than 50 percent of the stock, they do not work together and he "wouldn't use the word control." June 22, 2009 Tr. at 291. He further stated that one could not "count on" the fact that the three bondholders would act together going forward, and noted "[t]hey certainly haven't acted together very well so far." *Id.* at 291. He continued, "I think it's highly speculative to assume that these three will remain in concert." *Id.* at 292. Thus, this fact finding can be fairly attributed to Judge King by his agreement with Ridings' analysis.

Moreover, this Court did not simply "defer" to Judge King's fact findings (or lack thereof), as the Equity Committee contends in its Reply. Rather, it reviewed the evidence available to it at the time, and concluded that the Equity Committee failed to show that such a finding of no control was clearly erroneous.

[7] Even if Judge King found in favor of the Equity Committee on the issue on control and even if his failure to then include a control premium in the valuation was error as a matter of law, the Equity Committee would not necessarily be entitled to reversal. The debtor has argued that there was no control in fact, and the Court finds this argument persuasive. As may the court of appeals, this court may affirm the bankruptcy court's judgment on any basis supported by the record. *See United States v. Clay*, 408 F.3d 214, 218 n.7 (5th Cir. 2005).

15

conclusion that Spectrum's enterprise value can be determined by taking into account the current market prices of Debtors' securities and that Spectrum's future earning potential should be excluded.[8] However, in his oral finding and conclusions, Judge King expressly stated that "[e]ven if the market is wrong, I would find Mr. Ridings' analysis [persuasive] to show that there's no value above the amount of debt this company holds." As the Committee acknowledges, Ridings testified that "the market is not a reliable reflection of values for a company's stock or its bonds when the company is in financial distress or in bankruptcy." Reply at 18 n.10 (citing June 22, 2009 Tr. at 257-58). Thus, the Equity Committee has not demonstrated a likelihood of success on the issue of whether the Bankruptcy Judge's consideration of current market prices resulted in an incorrect valuation, nor has it shown that, had the Bankruptcy Judge not erred in this alleged manner, the result would have been an enterprise value in excess of the debt such that a stay might be justified.

Thus, the Court finds that, insofar as the Equity Committee has failed to show a substantial likelihood of success on the merits with regard to its main issues, there is no controlling issue of law subject to disagreement that would be appropriate to certify for interlocutory appeal.

Further, after considering the harm factors in the stay analysis, the Court would only consider granting a stay on the issues related to valuation. The Equity Committee's other proposed issues, even if meritorious, would not

---

[8] The Committee briefed this issue as one point, and thus this Court considers them together.

16

warrant a stay pending appeal.

## Conclusion

The only issue currently before this Court is whether a stay of the confirmation order is appropriate pending the resolution of the appeal. Based on the factors relevant to such a motion, the Court ruled that a stay was not warranted. For the reasons stated herein, the Court declines to certify an interlocutory appeal of its Order denying the stay. The Equity Committee's Emergency Motion for Certification of Interlocutory Appeal (docket no. 17) is accordingly DENIED. The Clerk of Court is directed to forward a copy of this Order to the Fifth Circuit Court of Appeals.

It is so ORDERED.

SIGNED this 5th day of August, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE